LAURNAGA & CO., SUCESORES, APELANTES, v. VÉLEZ ET AL.,
APELADOS.

APELACIÓN procedente de la Corte de Distrito de Aguadilla.

No. 924.—Resuelto en marzo 17, 1913.

INJUNCTION—DAÑOS A LA PROPIEDAD—DEMANDADO.—El dueño de una finca atravesada por un río que se considera dueño de sus orillas y de las cuales varias personas sacan cascajo sin su consentimiento, no necesita para presentar una solicitud de *injunction*, investigar si dichas personas actúan bajo órdenes de un superior, sino que le basta indagar los nombres de dichas personas y hacerlas partes demandadas, aun cuando algunas de ellas sean confinados del presidio y actúen todas bajo las órdenes del Comisionado del Interior.

ID.—DISOLUCIÓN DEL INJUNCTION PRELIMINAR—APELACIÓN—FALTA DE PARTE DEMANDADA.—El mero hecho de que no haya sido incluído como demandado una parte necesaria, no es motivo bastante por sí sólo para confirmar en apelación una resolución disolviendo el *injunction* preliminar.

RÍOS—PROPIEDAD DEL CAUCE.—Antes de la ocupación americana, los ríos de Puerto Rico y sus cauces eran del dominio público y como tales pertenecían a la Corona de España.

RÍOS NO NAVEGABLES—PROPIEDAD DE LOS MISMOS.—Los ríos no navegables y sus cauces fueron cedidos por el artículo 8 del Tratado de París a los Estados Unidos y en virtud de la sección 13 de la Ley Foraker quedaron bajo la dirección y a beneficio de El Pueblo de Puerto Rico.

ID.—CAUCE.—Según la ley de aguas vigente en esta isla, el cauce de un río comprende toda la extensión que cubren sus aguas en las mayores crecidas ordinarias.

ID.—RIBERAS.—Se entienden por riberas las fajas laterales de los cauces de los ríos comprendidas entre el nivel de sus bajas aguas y el que éstas alcancen en su mayores crecidas ordinarias.

ID.—MÁRGENES.—Por márgenes se entienden las zonas laterales que lindan con las riberas.

ID.—PROPIEDAD DE LAS RIBERAS.—Las riberas de los ríos forman parte del cauce y son del dominio público y pertenecen a los Estados Unidos cuando el río es navegable y a El Pueblo de Puerto Rico cuando no lo es.

ARROYOS—PROPIEDAD DEL CAUCE.—El cauce de los arroyos que atraviesan fincas del dominio privado pertenece al dueño de la finca.

RÍOS—CASCAJO.—El cascajo que se encuentra en el cauce natural de los ríos no navegables en esta isla pertenece a El Pueblo de Puerto Rico.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Carlos Franco Soto* y *José de Guzmán Benítez.*

Abogado de los apelados: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

En el presente caso los apelantes solicitaron que se decretara un *injunction* para impedir que los apelados sacaran grava y cascajos del río "Culebrinas" en aquella parte en que el mismo sirve de lindero y pasa por sus terrenos.

Las alegaciones contenidas en la solicitud de *injunction* pueden expresarse como sigue: que la sociedad demandante es dueña en absoluto de las fincas rústicas descritas en la demanda bajo las letras "A" y "B"; que a corta distancia de la parte posterior de las edificaciones situadas en esa porción de terreno descrita por la letra "A" está el río "Culebrinas," cuyas márgenes son bastante altas, habiendo sus aguas socavado el terreno hasta llegar a las partes laterales de dichas edificaciones, por cuya razón los demandantes se han visto obligados a tener que poner todos los años paredes de contensión con el fin de evitar los graves daños a que están expuestas las referidas edificaciones, especialmente en las épocas en que el mencionado río ha crecido; que los demandados, sin el consentimiento y no obstante las protestas hechas por la sociedad demandante, ilegalmente penetraron en los terrenos pertenecientes a la referida finca en los días 22, 23, y 24 de octubre último, sacando de los mismos cascajo y grava, haciendo excavaciones y sacando dichos materiales, y particularmente del mismo sitio en la orilla del río en donde la sociedad demandante ha construído sus muros o paredes de contensión, haciendo aun mayor el peligro de daños que amenazan destrucción con motivo del expresado río. Que de continuar ejecutando los demandados estos actos, la sociedad demandante recibirá graves e irreparables perjuicios, puesto que los cimientos de mampostería que se encuentran situados al lado del referido río, indudablemente serán perjudicados y debilitados, causando así graves peligros.

La solicitud interesando la expedición del *injunction* fué debidamente jurada y presentada a la Corte de Distrito de Aguadilla, y dicha corte en 30 de octubre de 1912, expidió un

*injunction* preliminar' u orden restrictiva, habiendo primeramente exigido una fianza a los demandantes en la suma de $500, que fué prontamente presentada.

El día primero de noviembre del año último, el Fiscal de la Corte de Distrito de Aguadilla compareció a nombre y en representación del Attorney General de Puerto Rico en defensa de los demandados, y presentó una moción en la cual solicitó que se anulara la orden de *injunction* preliminar que había sido anteriormente expedida, alegando que los demandados se encontraban sacando grava del río "Culebrinas" por orden del Comisionado del Interior de Puerto Rico y que dicha grava pertenecía al Pueblo de Puerto Rico, la que se sacaba de la superficie de la tierra con tenedores a una distancia que no era menor de treinta metros del sitio en que se encontraba el terraplén, sobre cuyo terraplén, y a una distancia no menor de siete metros de sus partes laterales, estaban los cimientos de una pared o cerca de la casa que pertenece a los demandantes y que, de acuerdo con la Ley de Aguas y el Código Político, el Comisionado del Interior de Puerto Rico tenía facultades para ordenar la extracción de grava de los cauces de los ríos. La referida moción estaba jurada por información y creencia por el Fiscal, y se acompañaba a la misma un *affidavit* del demandado, Manuel Vélez, en el que se repetían y contenía en sustancia los hechos expresados por dicho funcionario.

Al celebrarse la vista de la moción, se presentaron contra-*affidavits* por los demandantes ampliando los hechos expresados en la solicitud de *injunction* y contradiciendo los *affidavits* que fueron presentados en apoyo de la moción para que se anulara el *injunction.*

La Corte de Distrito de Aguadilla dictó una resolución el día 12 de noviembre último, dejando sin efecto el *injunction* preliminar que hasta entonces se había expedido contra los demandados, por los fundamentos legales que se expresan en la mencionada resolución.

Los apelantes alegan en su alegato que la Corte de Dis-

trito de Aguadilla cometió error al anular el *injunction* preliminar que había sido expedido en este caso.  A juicio del abogado de los apelantes, dos cuestiones se presentan en este caso: una de ellas se refiere a los daños irreparables que pueden originarse a los demandantes debido a la extracción de la grava en el sitio de referencia en las orillas del río, en cuyo sitio los demandantes han construído paredes de contensión con el fin de evitar los daños que amenaza el río a dichos establecimientos en sus paredes y cimientos; y la segunda cuestión envuelta y que se deduce de la primera, se refiere al derecho que tienen los demandantes a las márgenes y riberas del río ''Culebrinas'' que atraviesa la finca de los demandantes como propiedad particular, y a la entrada ilegal de los referidos demandados en los terrenos de los demandantes.  Con motivo del supuesto error que se alega, fué cometido por la Corte de Distrito de Aguadilla, los apelantes suplican a este tribunal que revoque la resolución dictada por la corte inferior, disolviendo el *injunction* preliminar que había sido expedido, dejando en toda su fuerza y vigor la expresada resolución de la corte inferior, que fué dictada primeramente el día 30 de octubre último y por virtud de la cual la solicitud de *injunction* había sido considerada suficiente, y los demandantes con derecho a la misma, y que se expida una orden por esta corte concediendo un auto de *injunction* contra los demandados, con las costas.

Los apelados ante este tribunal alegan que fueron indebidamente incluídos en este caso como tales demandados y son meramente partes nominales y que no tienen interés alguno en la acción, y que además son empleados, por así decirlo, encontrándose bajo las órdenes inmediatas del Comisionado del Interior; que no tienen otra cosa que hacer sino obedecer las órdenes de su jefe; que la única parte verdadera en este procedimiento es el Comisionado del Interior, quien es necesaria e indispensablemente parte en el mismo; y alegan, además, como materia de defensa, que tres de los cinco demandados son confinados del presidio, que

se encuentran cumpliendo sentencias con trabajos forzados, ocupados como trabajadores en las carreteras públicas, y que uno de los otros demandados es el guardia bajo cuya custodia se encuentran estos presos, y que el primero de los cinco, a saber: Manuel Vélez, es el capataz que está al frente del cuerpo de trabajadores en las carreteras públicas. Alegan los apelados por conducto del Fiscal de esta corte, que el mero hecho de que los demandantes no hayan incluído como parte en este pleito al Comisionado del Interior, es una razón suficiente para confirmar la resolución apelada.

No creemos que esta última afirmación es una proposición correcta.

Los demandantes encontráron cinco hombres trabajando en el río "Culebrinas" sacando grava del mismo. Dichos demandantes no tenían que alegar por virtud de qué autoridad se encontraban allí los demandados, alegando, como lo hicieron, que eran los dueños de la finca en donde estaba la grava; y considerando que las personas que la sacaban del río, estaban allí en violación del derecho de los demandantes, todo lo que tenían que hacer para establecer su acción y solicitar un *injunction* era determinar los nombres de las personas a quienes encontraron infringiendo sus derechos según lo entendieron. Si los demandados no eran las debidas partes contra quienes el *injunction* debía haber sido expedido, ellos pudieron alegar ese derecho como materia de defensa, lo que hicieron en la moción que presentaron para que se anulara la orden prohibitoria, que fué declarada con lugar por la corte. La corte de distrito presenta como una de las razones que tuvo para anular la orden de *injunction* preliminar, el hecho de que los demandantes en su solicitud de *injunction,* no revelaron todos los hechos esenciales y dejaron de expresar la autoridad por virtud de la cual los demandados ejecutaban dichos actos. Indudablemente que esta cuestión tal como fué considerada por el juez de la corte inferior, sirvió de base a la alegación que fué presentada por el Fiscal y que ha sido precisamente considerada y deses-

timada por esta corte.   Pero, aparte de esta cuestión pre-
liminar, el criterio adoptado por el Fiscal en cuanto a las
cuestiones esenciales envueltas en este caso, no es esencial-
mente distinto del que tiene el abogado de los apelantes;
aunque, sin embargo, él alega lo contrario de las proposi-
ciones presentadas y sostiene que no ha sido cometido nin-
gún error por la corte sentenciadora.

Examinemos, por tanto, las cuestiones envueltas en esta
apelación.

La primera se refiere a los daños irreparables que pueden
ocasionarse a los demandantes con motivo de la extracción
de grava del cauce del río y la consiguiente debilitación de
los muros o paredes de contensión y cimientos de las edifi-
caciones pertenecientes a los demandantes.   Esta es simple-
mente una cuestión de hecho que ha sido negada en el *affidavit*
de los demandados y que la corte al examinarla la resolvió
en contra de la alegación de los apelantes.   La distancia
del lugar en que la grava se extraía de las paredes que se
alega están corriendo peligro de debilitarse a consecuencia
de tales actos, es demasiado grande para hacer que el peligro
resulte inminente o, a la sumo, que hayan probabilidades de
ocasionarse, a menos que el trabajo de extracción de grava
continuase por un período de tiempo considerable y se ex-
tendiera a una superficie mucho mayor que aquella que ha sido
demostrada por los autos en este caso.

La segunda cuestión envuelta en esta discusión es aun
de más importancia, fundándose, como se funda, en el derecho
de propiedad a la grava que se extraía, cuyo derecho de pro-
piedad alegaron los apelantes que tenían ellos solamente,
y que, por otra parte, el Fiscal alegaba lo tenía El Pueblo
de Puerto Rico bajo el cuidado e inspección del Comisionado
del Interior.

Los ríos y sus cauces, según existen en Puerto Rico, eran
de dominio público con anterioridad a la ocupación ameri-
cana, y, como tales, pertenecían a la Corona de España.   Por
virtud del Artículo VIII del Tratado de París, fueron cedidos

a los Estados Unidos de América; y según el artículo 13 de
la Ley Orgánica, quedaron puestos por el Congreso bajo la
dirección del Pueblo de Puerto Rico, por quien, y a beneficio
del cual habían de ser conservados junto con otras propie-
dades "los ríos no navegables y sus cauces."

El Código Civil Revisado, que empezó a regir en primero
de julio de 1902, comprende los ríos y sus cauces entre otras
propiedades de dominio público.    Véanse los artículos 327
y 414, párrafo primero.

Por *"cauce"* de un río se entiende, de acuerdo con la Ley
de Aguas vigente y que rige en esta isla, el terreno o su-
perficie cubierta por las aguas del río en sus mayores cre-
cientes *ordinarias.*    Por *"riberas"* se comprende las orillas
laterales del cauce de los ríos que se extienden desde las
aguas a su más bajo nivel al punto o línea donde llegan a
alcanzar en sus mayores crecientes *ordinarias.*    Por *márgenes*
se entienden las orillas de los ríos que están limitadas por
las riberas.

Las *riberas* forman, de tal modo, parte del cauce del río
y son, por consiguiente, del dominio público; perteneciendo a
los Estados Unidos cuando el río es navegable y al Pueblo de
Puerto Rico cuando no lo es.    Los ríos quedan expresamente
sujetos también a la servidumbre a que hace referencia el
artículo 36 de la Ley de Aguas, y de igual modo, las már-
genes, que como regla general pertenecen a individuos par-
ticulares, dentro de una zona de tres metros de ancho.    Esto
podrá comprenderse mejor de un examen del diseño que se
acompaña:

## CAUCE O LECHO

AGUAS MAYORES.　CRECIDAS ORDINARIAS

| Margen de 3 metros | Ribera | Agua nivel natural | Ribera | Margen de 3 metros |
|---|---|---|---|---|

| Dominio privado. Servidumbre. | DOMINIO PÚBLICO. Servidumbre. | | Servidumbre. | Dominio privado. Servidumbre. |

Ambas partes en esta acción hacen referencia a la Ley de Aguas, de la cual haremos algunas citas:

"Artículo 32. Alveo o cauce natural de un río o arroyo es el terreno que cubren sus aguas en las mayores crecidas ordinarias.

"Art. 33. Los álveos de todos los arroyos pertenecen a los dueños de las heredades de los terrenos que atraviesan, con las limitaciones que establece el artículo 31 respecto de los álveos de las aguas pluviales.

"Art. 34. Son de dominio público: 1°. Los álveos o cauces de los arroyos que no se hallen comprendidos en el artículo anterior. 2°. Los álveos o cauces naturales de los ríos en la extensión que cubren sus aguas en las mayores crecidas ordinarias.

"Art. 35. Se entiende por riberas las fajas laterales de los álveos de los ríos comprendidos entre el nivel de sus bajas aguas y el que éstas alcancen en sus mayores avenidas ordinarias, y por márgenes las zonas laterales que lindan con las riberas.

"Art. 36. Las riberas, aun cuando sean de dominio privado en virtud de antigua ley o de costumbre, están sujetas en toda su extensión, y las márgenes en una zona de tres metros, a la servidumbre de uso público en interés general de la navegación, la flotación, la pesca y el salvamento."

En esta apelación, las dos partes se fundan en el artículo 133 del Código Político, usando el apelante, al parecer, la versión española y el apelado la inglesa, las que contienen ligeras diferencias; el texto español expresa que el Comisionado del Interior vigilará todas las obras públicas insulares, incluyendo los edificios, caminos y puentes públicos, fuerzas hidráulicas, *los ríos navegables y sus construcciones,* y la versión inglesa expresa, además de esto, que *tendrá a su cargo* toda la propiedad insular. Las palabras "tendrá a su cargo" parecen haber sido omitidas en la traducción española. Sin embargo, según hemos considerado estas cuestiones, esta diferencia entre los dos textos puede que no sea importante. Existe una diferencia determinada en la Ley de Aguas en los artículos que hemos citado entre *arroyos* y *ríos.* Ambos se mencionan en el artículo 32, y en el 33 se dice que los cauces de todos los arroyos pertenecen a los

dueños de las fincas que atraviesan. El artículo 34 expresa que los cauces o álveos de los arroyos que no estén incluídos en el artículo anterior pertenecen al público, como también los terrenos cubiertos por los cauces naturales o álveos durante sus mayores crecientes ordinarias.

Por tanto, si "Culebrinas" es un arroyo, ciertamente el cauce de esa parte del mismo que atraviesa la finca propiedad de los demandantes les pertenece, siendo ellos dueños de la grava que contiene. Sin embargo, si esta corriente es un río, de acuerdo con el artículo 34, el terreno cubierto por su cauce natural o álveo durante las mayores crecientes ordinarias pertenece al Pueblo de Puerto Rico; y, por consiguiente, es éste el dueño de la grava que contiene. En ninguna parte de estos autos aparece la palabra "arroyo," pero la corriente de donde se tomó toda la grava, se denomina un *río*. Por lo tanto, debemos resolver, como lo hizo la corte sentenciadora, que la grava que se extraía por los demandados del río, pertenecía al Pueblo de Puerto Rico, y los demandantes no tenían ningún derecho a la misma. En su consecuencia, los demandados que obraban por órdenes del Comisionado del Interior estuvieron justificados y protegidos al sacar dicha grava para el uso de las carreteras públicas. Según apreciamos esta cuestión, la orden apelada anulando el *injunction* preliminar debe confirmarse. Surgen otras cuestiones y muchas podrían ser argumentadas en esta discusión con respecto a los daños irreparables, así como a la continuación de dichos actos, multiplicidad de pleitos y otras de igual índole, pero no hay necesidad de discutirlas al resolver este caso, fundándose, como el mismo se funda, en la propiedad de la grava que se extrae por los demandados del río "Culebrinas."

No apareciendo en los autos que se haya cometido ningún error fundamental, la sentencia dictada por la corte inferior debe ser confirmada en todas sus partes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.